UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAYMZ BAGBY,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:23-cv-01494-MHH |
| **MARK PETTWAY, in his official capacity as Sheriff of Jefferson County, Alabama, et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

Plaintiff Jaymz Bagby worked as a deputy sheriff for the Jefferson County Sheriff's Office. In his complaint, Deputy Bagby alleges that the defendants discriminated against him based on his race. (Doc. 1). He contends that the defendants violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and 42 U.S.C. 2000e, as amended, and 42 U.S.C. § 1983. (Doc. 1, pp. 1–2, ¶ 1). The defendants have asked the Court to enter judgment in their favor on Deputy Bagby's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 8). Deputy Bagby has not responded to the motion. (*See* Doc. 6, p. 2) (scheduling order setting deadline for summary judgment opposition brief).

1

\*\*\*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party. *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 83 F.4th 922, 926 (11th Cir. 2023). Consistent with this standard, the Court views the evidence in this case in the light most favorable to Deputy Bagby.

"If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the

2

movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Even when a non-movant does not oppose a summary judgement motion, the district court must evaluate the merits of the motion. *See Dunlap v. Transamerica Occidental Life Ins. Co.,* 858 F.2d 629, 632 (11th Cir. 1988). Therefore, the Court must examine the defendants' evidentiary materials and "determine whether they establish the absence of a genuine issue of material fact." *U.S. v. One Piece of Real Prop.,* 363 F.3d 1099, 1102 (11th Cir. 2004) (quoting *Jaroma v. Massey,* 873 F.2d 17, 20 (1st Cir. 1989)).

*** 

Here, the evidence shows that, on December 7, 2020, Jefferson County Sheriff Mark Pettway, a Black male, hired Deputy Bagby, a white male, as a deputy sheriff. (Doc. 9-3, p. 2; Doc. 27-1, p. 51, tp. 195). Deputy Bagby worked in the Corrections Division of the Jefferson County Sheriff's Office. (Doc. 9-2 p. 2, ¶ 4).

On July 6, 2021, an inmate at the Jefferson County Jail, Kortdero Sillence, injured his shoulder while horseplaying with Deputy Devonta Brown, a Black male deputy. Deputy Bagby was on duty. (Doc. 9-3, p. 54, 63). Neither deputy reported the incident nor requested medical assistance for Mr. Sillence. (Doc. 9-3, p. 63). The following day while seeking medical treatment, Mr. Sillence stated that Deputy Bagby had assisted in "popping" his shoulder back into place; Deputy Bagby denies the allegation. (Doc. 9-3, p. 63).

3

Internal Affairs investigated the incident and suspended Deputy Brown for three days.  (Doc. 9-3, p. 57).  Deputy Brown was suspended for one day for not properly ensuring the safety of individuals in custody and two days for neglecting his duties by engaging in horseplay with Mr. Sillence.  (Doc. 9-3).  As part of the internal affairs investigation, Sgt. William Michael Schuelly, a white male, conducted a polygraph test of Deputy Bagby because of discrepancies between Deputy Bagby's and Mr. Sillence's accounts of the events following Mr. Sillence's injury.  (Doc. 9-3, pp. 75–76).  The results indicated that Deputy Bagby was deceptive when asked whether he had helped pop Mr. Sillence's shoulder back into its socket.  (Doc. 9-3, pp. 75–76).

Following a *Loudermill* hearing on May 19, 2022, Sheriff Pettway suspended Deputy Bagby for 15 days for making false statements.  (Doc. 9-3, p. 67).  Deputy Bagby also received written reprimands for failure to report the incident and failure to safeguard Mr. Sillence.  (Doc. 9-3, pp. 67–70).  Deputy Bagby appealed the suspension to the Personnel Board of Jefferson County, and a hearing officer recommended overturning the suspension.  (Doc. 9-3, pp. 78–79).  Over objections from Sheriff Pettway, the Personnel Board affirmed the hearing officer's recommendation and overturned the suspension.  (Doc. 9-3, pp. 78–79).

Meanwhile, on January 21, 2022, on behalf of his son, inmate Chase LaFoy, Steve LaFoy made a complaint of sexual harassment against Deputy Bagby.  (Doc.

9-4, p. 45).  Mr. LaFoy asserted that Deputy Bagby slapped Chase LaFoy on the buttocks, made sexually explicit remarks, and used derogatory language.  (Doc. 9-4, p. 45).  Several witnesses, including Deputy John Chapple and inmate Joseph Moore, confirmed parts of the incident.  (Doc. 9-4, pp. 46, 48).  The JCSO Corrections Division investigated the complaint.  (Doc. 9-4, pp. 51–52, 58).  Sgt. Brandon Sunday and Sgt. Ali Daniels, Black males, investigated and concluded that there was evidence of criminal misconduct.  (Doc. 9-4, p. 50).  In February 2022, a warrant was issued for Deputy Bagby's arrest.  (Doc. 9-4, p. 41).

Following Deputy Bagby's arrest, Internal Affairs Division Commander NaShonda Howard, a Black female, instructed Deputy Bagby to surrender his badge, commission, swipe card, and vehicle, and she placed him on paid administrative leave.  (Doc. 9-3, p. 36).  After the administrative leave expired, Deputy Bagby was assigned administrative duties in the property room pending the investigation of the charges against him.  (Doc. 9-5, p.15, tp. 53:3–13).

Internal Affairs Deputy Constance Echols, a Black female, interviewed Deputy Bagby and witnesses and administered a polygraph test to Deputy Bagby.  (Doc. 9-3, pp. 15–31).  The polygraph test indicated that Deputy Bagby's denial of slapping Chase LaFoy was not truthful.  (Doc. 9-3, pp. 33–34).  Deputy Echols concluded that Deputy Bagby violated multiple JCSO policies and recommended discipline including suspension and termination.  (Doc. 9-3, p. 31).

5

On April 7, 2022, Deputy Bagby attended a *Loudermill* hearing with Sheriff Pettway. (Doc. 9, p. 8, ¶ 20). Deputy Bagby contested the findings against him and presented a statement from inmate Dazzmin Ford in which Mr. Ford recanted his prior testimony. (Doc. 9, p. 8, ¶ 20.). Deputy Echols maintained her disciplinary recommendations, and Deputy Bagby remained on administrative assignment. (Doc. 9, p. 8, ¶ 20). Sheriff Pettway deferred disciplinary decisions pending the outcome of the criminal proceedings concerning Deputy Bagby. (Doc. 9, p. 8, ¶ 21).

In July 2022, Deputy Bagby filed a charge of race discrimination with the Equal Employment Opportunity Commission. In the charge, Deputy Bagby complained of race discrimination based on his arrest, prosecution, and disciplinary actions. (Doc. 1-1).

On September 28, 2022, the criminal harassment case against Deputy Bagby was dismissed with prejudice for want of prosecution. (Doc. 9-1, pp. 94–95). On November 8, 2022, the presiding judge denied motions to reinstate the case. (Doc. 9-1, p. 96). On November 9, 2022, Sheriff Pettway suspended Deputy Bagby for five days for conduct unbecoming a deputy but did not follow Internal Affairs' recommendation for termination. (Doc. 9-1, p. 64; Doc. 9-7, p. 28, tpp. 106–108).

Deputy Bagby appealed the five-day suspension. (Doc. 9, p. 10, ¶ 26.). After hearings, the hearing officer and the Personnel Board affirmed the suspension, finding sufficient evidence of misconduct. (Doc. 9, p. 10, ¶ 26). The Personnel

6

Board also found that Mr. Ford's recantation of his initial statement was not credible. (Doc. 9, p. 10, ¶ 26). Deputy Bagby appealed to the Jefferson County Circuit Court, and the state court upheld the Personnel Board's decision. (Doc. 9-3, p. 52).

Deputy Bagby contends that he has suffered damages because of these actions, including loss of overtime pay, denial of a 5% pay increase for Emergency Response Team membership, loss of commendations and training opportunities, and severe harm to his professional reputation. (Doc. 1, p. 8, ¶ 28). Deputy Bagby also alleges that similarly situated Black deputies received more lenient discipline for comparable misconduct. (Doc. 1, p. 8–9, ¶ 28).

In his complaint, Deputy Bagby asserts three claims against Mark Pettway in his official capacity as Sherriff of Jefferson County: discriminatory discipline in violation of Title VII, Title VII retaliation, and malicious prosecution. (Doc. 1, pp. 9–16, ¶¶ 31–68). Deputy Bagby asserts two claims against defendants Mark Pettway, NaShonda Howard, Ali Daniels, and Constance Echols in their individual capacities: malicious prosecution and violation of the Equal Protection Clause under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 1, pp. 13–16, ¶¶ 59–68).

***

For his Title VII official capacity race discrimination claim against Sheriff Pettway, Deputy Bagby contends that his five-day suspension was motivated by

7

race. (Doc. 1, p. 9, ¶ 32). Employees who believe they have experienced racial discrimination may submit direct evidence to support their claims. *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1335 (11th Cir. 2015). When an employee relies on circumstantial evidence of discriminatory intent, the employee may proceed under the *McDonnell Douglas* burden-shifting framework or present a convincing mosaic of circumstantial evidence from which a jury may infer intentional discrimination. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 943-47 (11th Cir. 2023).

Under the *McDonnell Douglas* framework, Deputy Bagby must establish a prima facie case of discrimination by demonstrating that he belongs to a protected class, he was qualified for his job, he experienced a negative employment action, and he was treated less favorably than a similarly situated person outside his protected class. *Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802). Here, Deputy Bagby has not provided evidence to substantiate his allegation that Black employees received more lenient discipline for a similar infraction.[1] Deputy Bagby compares his situation to proceedings involving Deputy Davis (Black female), Deputy Chestnut (Black

---

[1] Sheriff Pettway identified these reasons for Deputy Bagby's suspension: "(1) Deputy Bagby's co-worker, Deputy Chapple's eyewitness statement and testimony; (2) Deputy Bagby's failed polygraph test; and (3) two other inmate witnesses (Joseph Moore and Dazzmin Ford)." (Doc. 11, p. 22).

male), Deputy Terrance Smith (Black male), Deputy Quindarious Reeves (Black male). (Doc. 1, p. 8, ¶ 29). None of the conduct attributed to these Black deputies is as serious as the misconduct for which Deputy Bagby was disciplined. (Doc. 9-2, p. 3, ¶ 9; *see also* Doc. 9-1, pp.11–12, tpp. 40:15-44:11). Additionally, Deputy Bagby has not presented evidence to show that race was the real reason for the discipline he received.

Therefore, Sheriff Pettway has demonstrated that there is not a genuine dispute of material fact as to Deputy Bagby's official capacity race discrimination claim. The Court will enter judgment for Sheriff Pettway in his official capacity on Deputy Bagby's race discrimination claim.

\*\*\*

For his Title VII official capacity retaliation claim against Sheriff Pettway, Deputy Bagby alleges that Sheriff Pettway pursued unsupported criminal charges against him because he (Deputy Bagby) filed a discrimination charge with the Equal Employment Opportunity Commission. (Doc 1, p. 12, ¶ 47). To establish a prima facie case of retaliation under Title VII, Deputy Bagby must demonstrate that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citing *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021 (11th.

9

Cir. 1994)). "[T]o be actionable, any retaliatory actions must have occurred after [Deputy Bagby's] formal complaints were filed." *Cheatham v. DeKalb Cnty., Georgia*, 682 Fed. Appx. 881, 887 (11th Cir. 2017).

Here, Deputy Bagby cannot establish a retaliation claim based on the criminal proceedings against him because he filed his EEOC charge after criminal charges were brought against him. A magistrate issued a warrant for Deputy Bagby's arrest on February 1, 2022. (Doc. 9-4, p. 41). Deputy Bagby did not file his EEOC charge until July 28, 2022. (Doc. 1-1). Therefore, the Court will enter judgment for Sheriff Pettway on Deputy Bagby's official capacity retaliation claim.

***

For his malicious prosecution claim, Deputy Bagby asserts that the defendants maliciously pursued a criminal charge against him without probable cause. (Doc. 1, p. 14, ¶ 61). Deputy Bagby alleges that the charge against him was unsubstantiated. (Doc. 1, p. 14, ¶ 61). Deputy Bagby also states that the criminal proceeding ultimately ended in his favor. (Doc. 1, p. 14, ¶ 61).

To establish a malicious prosecution claim, Mr. Bagby must demonstrate that an arrest warrant was "'(i) instituted without any probable cause'; (ii) the 'motive in instituting' the [charge] 'was malicious,' which [i]s often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice;

10

and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" *Thompson v. Clark*, 596 U.S. 36, 44 (2022).

"At the Founding, the presence of a valid arrest warrant made an arrest reasonable." *United States v. Phillips*, 834 F.3d 1176, 1180 (11th Cir. 2016). "The Warrants Clause requires every warrant to be particular, sworn, and supported by probable cause." *Phillips*, 834 F.3d at 1180. "Therefore, an arrest warrant creates a presumption, albeit a rebuttable one, that probable cause existed for the arrest." *Turner v. Williams*, 65 F.4th 564, 582 (11th Cir. 2023). As noted, a magistrate issued a warrant for Deputy Bagby's arrest on February 1, 2022. (Doc. 9-4, p. 41). Because Deputy Bagby has not rebutted the presumption of probable cause for his arrest, there is no genuine dispute of material fact regarding Deputy Bagby's malicious prosecution claim. Accordingly, the Court will enter judgment for the defendants on that claim.

***

For his equal protection claim, Deputy Bagby alleges that the defendants subjected him to unlawful race discrimination and retaliatory criminal prosecution. (Doc. 1, p. 15, ¶ 67). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Deputy Bagby must present evidence, not mere allegations, showing both disparate treatment and discriminatory,

11

or retaliatory, animus. As discussed above, he has not done so. Conclusory assertions of race discrimination or retaliation, unsupported by specific facts in the record, do not create a genuine dispute of material fact. Therefore, the Court will enter judgment for the defendants on Deputy Bagby's equal protection claim.

***

For the reasons discussed above, the Court grants the defendants' motion for summary judgment on Deputy Bagby's claims. The Court will enter a final judgment. The Clerk shall please TERM Docs. 8 and 12.

**DONE** and **ORDERED** this September 30, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE